## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 20-9541-GW-KSx | Date | February 1, 2021 |
|---|---|---|---|
| Title | *Gym Management Services, Inc. v. Vantapro Specialty Insurance Company* | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Charles A. Mayr | Lawrence Hecimovich |

**PROCEEDINGS:** **TELEPHONIC HEARING ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' FIRST AMENDED COMPLAINT [17]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court GRANTS the Motion. Defendant will prepare and file a proposed judgment forthwith.

: 09

Initials of Preparer JG

<u>*Gym Management Services, Inc. v. Vantapro Specialty Insurance Co.*</u>; Case No. 2:20-cv-09541-GW
Tentative Ruling on Motion for Judgment on the Pleadings

I.     **Background**[1]

This case is one of many that have been litigated across the country between insureds and their insurers over whether a property insurance policy covers losses due to government shutdown orders imposed to combat the ongoing COVID-19 pandemic. For the following reasons, the Court **GRANTS** the defendant's motion for judgment on the pleadings.

A.  <u>Factual background</u>

The plaintiffs are composed of various local Gold's Gym franchises located in the District and the company responsible for operating all of them, Gym Management Services, Inc. (collectively, "GMS").[2]

Several months before the COVID-19 pandemic first hit, GMS purchased a property insurance policy (the "Policy"[3]) from defendant Vantapro Specialty Insurance Company. Compl. ¶ 40. The Policy spanned one year, from October 17, 2019 through October 17, 2020. It contained several coverage provisions that purported to cover losses attributable to "direct physical loss of or physical damage to" the covered property. ECF No. 1 at Page ID #97.

GMS argues that its loss of business income caused by the various shutdown orders (which included directives specifically directing gyms to temporarily close) is covered by the Policy. On March 18, 2020, GMS submitted a claim to Vantapro for reimbursement under the Policy. Compl. ¶ 82. After requesting some additional information from GMS, Vantapro denied the reimbursement request. It found that none of the GMS plaintiffs had suffered a physical loss of or damage to its property. *Id.* ¶ 84.

---

[1] The following abbreviations are used for the filings: (1) Notice of Removal ("NoR"), ECF No. 1; (2) Plaintiff's First Amended Complaint ("Compl."), ECF No. 1-2; (3) Defendant's Motion for Judgment on the Pleadings ("Mot."), ECF No. 17; (4) Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings ("Opp."), ECF No. 19; (5) Defendant's Reply in Support of its Motion for Judgment on the Pleadings ("Reply"), ECF No. 20.

[2] The GMS plaintiffs are: Gym Management Services, Inc.; Musclehead, Inc.; Musclebound, Inc.; Los Angeles Corporate Fitness, Inc.; Thousand Oaks Corporate Fitness, Inc.; Simi Valley Corporate Fitness, Inc.; Culver City Corporate Fitness, Inc.; Fullerton Corporate Fitness, Inc.; West Covina Corporate Fitness, Inc.; Valencia Corporate Fitness, Inc.; Santa Anita Corporate Fitness, Inc.; Montclair Corporate Fitness, Inc.; Santa Barbara Corporate Fitness, Inc.; Oxnard Corporate Fitness, Inc.; Anaheim Corporate Fitness, Inc.; Carson Corporate Fitness, Inc.; and Glendale Corporate Fitness, Inc.

[3] *See supra* note 1; ECF No. 22-1.

B.  Procedural history

GMS disputes Vanapatro's denial of its reimbursement claim and filed this lawsuit against Vantapro, asserting two claims: (1) breach of the implied duty of good faith and fair dealing; and (2) breach of contract.  Vantapro removed the case to federal court based on diversity jurisdiction.  NoR ¶¶ 3-4.  Before the Court is Vantapro's motion for judgment on the pleadings.

## II.     Legal Standard

Rule 12(c) allows for any party to move for judgment on the pleadings after the pleadings are closed but within such time as not to delay the trial.  Besides being available to plaintiffs, the other major difference between a Rule 12(c) motion and Rule 12(b)(6) motion is the time of filing.  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  The standard applied on a Rule 12(c) motion is essentially the same as Rule 12(b)(6) motions, meaning a judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  A defendant is not entitled to judgment on the pleadings if the complaint raises issues of fact, which if proved would support recovery.  Similarly, if a defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings.  *General Conference Corp. Of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

## III.    Discussion

The interpretation of the Policy is governed by California law.  *See generally Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 718-21 (1993) (principal location of insured risk is most important consideration in determining which state's law applies to insurance policy); Restatement (Second) of Conflict of Laws § 193 (rights created by policy are determined by the local law of the state which the parties understood was to be the principal location of the insured risk).

"When determining whether a particular policy provides a potential for coverage," a court "[is] guided by the principle that interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995).  "[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates." *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982).  The purpose is

2

"to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy." *Id.* at 808. "Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, exclusionary clauses are interpreted narrowly against the insurer." *Id.*

  C. <u>The terms of the insurance policy</u>

  The Policy is an all-risk property insurance policy, meaning that it covers all losses of the type described unless the loss is specifically excluded.[4] In the insuring agreement of the Policy – the section that specifies what losses are covered – Vantapro promised to "pay for direct *physical loss of or damage to* Covered Property . . . caused by or resulting from any Covered Cause of Loss." ECF No. 1 at Page ID #97 (emphasis added).

  GMS argues that it is entitled to coverage under two coverage provisions in the Policy: (1) Business Income; and (2) Civil Authority.

  The Business Income coverage provides that Vantapro:

> will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by *direct physical loss of or physical damage to* property at premises . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.

ECF No. 1 at Page ID #113 (emphasis added). The Civil Authority coverage provides that:

> When a *Covered Cause of Loss* causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described promises, provided that both of the following apply:
>  (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>  (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at #114 (emphasis added).

  D. <u>Whether GMS has suffered from any "direct physical loss of or physical damage to" its property</u>

  The coverage provisions GMS argues apply to its situation require that GMS's property suffer from some "direct physical loss" or "physical damage." The importance of this requirement

---

[4] By contrast, a named-perils policy covers only losses attributable to expressly enumerated causes.

3

is highlighted by the fact that it is expressly set forth in the Policy's insuring agreement. *See Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 627 (9th Cir. 1996) ("In interpreting an insurance contract, this court must first look to the insuring agreement and determine whether coverage exists.").

Several federal courts (including this Court) have found that under California law, COVID-related restrictions on commercial activity and individuals' activities did not constitute "direct physical loss" or "physical damage" to property in the insurance context involving nearly identically-worded provisions. *See*, *e.g.*, *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-cv-04423, 2020 WL 5938689, at *1 (C.D. Cal. Oct. 2, 2020) (finding that plaintiff had not suffered any "direct physical loss of or damage to" property); *10E, LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-cv-04418, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) (same); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, No. 20-cv-06954, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020) (same); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 20-cv-03213, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) (same).

GMS has not offered a persuasive argument for why all those courts decided the issue wrongly. It argues that Vantapro has "cherry-pick[ed]" COVID-19 insurance cases in support of its argument. It is true that courts across the country, applying different bodies of state law, have not all arrived at the same result. Given the volume of such litigation, it is not a surprise that some courts will have decided in favor of the insureds. However, it is telling that the only cases GMS has identified in support of its position were out-of-state decisions applying other states' laws. *See* Opp. at 10-11 (citing decisions applying Virginia, Washington, Pennsylvania, and North Carolina law); s*ee, e.g.*, *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-00265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020) (applying Virginia law).

GMS relies strongly on *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 17-cv-04908, 2018 WL 3829767 (C.D. Cal. July 11, 2018). *See* Opp. at 7-8. However, that very same district court judge also presided over the *Mark's Engine Co. No. 28 Rest.*, an action much more similar to this one. The judge considered the exact same argument that GMS raises here and did not find it persuasive. *See Mark's Engine Co. No. 28 Rest.*, 2020 WL 5938689, at *4 (observing that "to the extent Plaintiff relies on this Court's order in *Total Intermodal* for the proposition that 'direct physical loss of' encompasses deprivation of property without physical change in the condition of the property, the Court notes that such an interpretation of an insurance

4

policy would be without any manageable bounds").

In its motion, Vantapro also argues that "Plaintiffs cannot establish entitlement to Civil Authority coverage as a matter of law because Plaintiffs have not alleged and cannot allege facts that could show that the governmental orders were issued in response to 'direct physical loss of or damage to' property within one mile of Plaintiffs' facilities. The governmental orders were issued 'as a result of the threat of COVID-19,' not as a result of 'direct physical loss or damage' causing 'damage to property.'" *See* Mot. at 2-3. Nowhere in the Opposition filing do the Plaintiffs directly respond to that argument.[5]

Because the Court finds that GMS has not suffered any "direct physical loss of or physical damage to" its property, the Court also finds that GMS is not entitled to any reimbursement under the Policy. Because both of GMS's claims are based on Vantapro's allegedly wrongful denial of coverage under the Policy, the Court dismisses both claims.

### IV.    Conclusion

Based on the foregoing discussion, the Court **GRANTS** the motion.

---

[5] Perhaps because the Civil Authority issue initially incorporates the "direct physical loss of or damage to property" element, Plaintiffs believed that their addressing the latter element was sufficient to deal with the former.